BENNINGTON,
*February,*
1842.

Manchester
*v.*
Dorset.

TOWN OF MANCHESTER *v.* TOWN OF DORSET.

Where a person resided in a town eight years in succession from the first day of April, 1817, and his list that year, exclusive of his poll, and for each of the four years next thereafter, exceeded sixty dollars, *it was held* that the list of 1817 could not be reckoned as one of the lists necessary to gain a settlement in such town, under the fourth section of the act, passed Nov. 4, 1817, providing that a person may gain a settlement if his rateable estate, besides his poll, shall be set in the list at the sum of sixty dollars or upwards, for five years in succession,—the list of 1817 having been made previously to the passage of the act.

Where such person, after the passage of the act of 1820, relating to the grand list, was possessed of property sufficient to have produced a list exceeding sixty dollars, under the listing laws previously in force, but, under the act of 1820, the list of such person's property was below sixty dollars, *it was held* that such reduced list operated to prevent the gaining of a settlement by such person, under said act of 1817, although his list for the four previous years exceeded that sum.

THIS was an appeal from an order of removal of Abel Derby, Catherine, his wife, and seven minor children, from the town of Manchester to the town of Dorset, made by two justices of the peace on the 20th day of April, 1840, at a court of examination held at said Manchester on the day and year last aforesaid.

Plea, that, at the time of making said examination and order of removal of the said Abel and Catharine, his wife, and their said minor children, neither of them had a legal settlement in said town of Dorset.

Issue to the court.

On the trial in the county court, the following facts were agreed to by the parties, viz :—

Abel Derby, being of full age, resided in Dorset from the first of April, 1817, for the space of eight years. His rateable estate, held in his own right, besides his poll, for the first six years, was set in the list of Dorset at the following sums: In 1817, $136.75; in 1818, $110.00; in 1819, $117.75; in 1820, $81.80; in 1821, $81.40; in 1822, $59.36; and the appraisal of his property in 1822, was as follows:—One house and lot appraised at $100.00, thirty acres of land at $267.00; and two cows and other cattle of three years old, five cattle of two years old, and two horses and mules, comprised the list of his personal estate, which real and personal

estate, under the act relating to the grand list then in force, was set in the list at the above sum of $59.36.

From these facts, the county court decided that the said Derby was unduly removed, and rendered a judgment for the defendants. The plaintiffs excepted to the decision.

*Sargeant & Miner*, for plaintiffs.

The pauper was put in the list for five years in succession at over sixty dollars; but one of those years was the list of the spring previous to passing the law. But unless he was in *statu quo* from the 1st of April to the 6th of November, 1817, doing nothing towards acquiring a settlement, he either gained a settlement under the old law or the list of 1817 must be reckoned. *Stamford* v. *Whitingham*, 2 Aik. 188; and *Poultney* v. *Fairhaven*, Brayton, 185, are analogous to this case.

In these cases the paupers had come into town less than a year previous to passing the act of 1801, and the act is as much prospective as that of 1817, which says that a person being set in the list five years, &c., shall have a settlement.

But there is another reason why Derby acquired a settlement in Dorset.

The act of 1817 provides that any person, being set in the list, &c., five years, shall have a settlement. When this law was passed, cows were set in the list at $6.50; cattle, two years old, at $5.00; horses and mules at $13.50. In 1820 the legislature altered the mode of assessing property, and established the following rates: "Cows $3.00; cattle, two years old, $2.00; horses and mules $8.00. Derby had, the sixth year that he lived in Dorset, 1822, a list of $59.36. His personal property that year, had not the listing law been changed, would have amounted to $92.36, independent of any reduction made by the different manner of assessing real estate.

The legislature intended, by the law of 1817, that if a man had a list of sixty dollars, according to the law then in force, he should gain a settlement. Property was intended to be the basis of acquiring a settlement.

Suppose the law had been that every man actually worth five hundred dollars, living in a town five successive years, should have a settlement, and, before the five years had run,

Congress had passed a law that dollars should be called *dimes* and eagles, *dollars.* The case would have been precisely like this. In neither could the right of settlement be affected.

It is not competent for the legislature, in such a collateral way, to infringe upon the rights of individuals or towns.

If the legislature had repealed the listing law entirely and collected taxes *per capita,* this would not have prevented a person from gaining a settlement.

*D. Roberts, Jr.,* for defendants.

The pauper's settlement, if he had any in Dorset, must have been acquired in the fourth mode specified in section 1 of the pauper act of Nov. 4, 1817.

I. His list of 1817 cannot be reckoned as one of the five years. This list was made up and returned in October previous to the passage of the act. It is not presumable that the legislature intended that their acts should operate retrospectively ; that while the act of 1801 was in force to give one a settlement, by reason of simple residence, this act of 1817, should, by relation back, cover the same ground and afford one a settlement by reason of the estate which he *had* possessed.

The language of the statute expressly refers to the future. " Legal settlements shall *hereafter* be gained in the following manner," &c.

II. The list of 1822 cannot be reckoned, for the plain reason that it does not amount to sixty dollars. It is acknowledged that there is property enough specified in Derby's list of that year to have been set down at sixty dollars, had the listing law remained as it was at the passing of the pauper act of 1817. But the legislature knew, when framing this law, that the listing law was subject and liable to be changed from time to time. With this knowledge, they do not say any person whose rateable estate *would be* set in the list, &c.; at the sum of sixty dollars, *as the listing law now stands.* But they refer to the lists which *shall be* made out, —not to the items of property which may be set there, but to the gross sum. It is to be supposed, then, that the legislature intended the thing they said.

It was surely competent, and proper enough, for the legis-

BENNINGTON,
*February,*
1842.

Manchester
*v.*
Dorset.

lature at any time to amend, alter, or repeal the pauper law, or so to alter it at any time before the acquiring of a settlement, under a particular statute, as to change the mode pre-scribed in that statute for acquiring a settlement. For, in such case, there could be no vested nor private right disturbed; but it was a mere matter of internal police and state policy with which no equitable considerations could mingle.

A pauper case, between towns, is, least of all, a case for any new reading of a statute.

The opinion of the court was delivered by

ROYCE, J.—The plaintiffs insist that the pauper acquired a settlement in Dorset under the fourth section of the statute of Nov. 4th, 1817, which enacts, 'That every person of full 'age, who shall reside in any town in this state, and whose 'rateable estate, held in his own right, besides his poll, shall 'be set in the list of such town at the assessment of dollars or 'upwards, for five years in succession, shall thereby gain a 'settlement in such town.' The pauper resided in Dorset from the beginning of 1817 for the period of six years or more; and it is agreed that his list in that town for 1817, and for each succeeding year thereafter till 1822, exceeded the sum of sixty dollars, exclusive of his poll; but in 1822 it was a trifle below that sum.

It is urged that the list of 1817 should be included, be-cause the taxes upon that list were all assessed and paid after the act of 1817 was passed. But this would be to give the statute a retrospective and forced construction, when its terms are wholly prospective. The list of that year was al-ready completed, and the language of the statute cannot, with truth or plausibility, be applied to it.

It is next insisted, that, inasmuch as the property of Derby remained sufficient to have produced a list, in 1822, of more than sixty dollars, according to the listing acts previous to 1820, the reductions, under the act of that year, should not be allowed to defeat his settlement. But it should be remem-bered that all our statutory provisions for the settlement of paupers belong to a class of statutory enactments, which are regarded as peculiarly positive and inflexible. Their object is not to regulate personal rights and duties, as between indi-viduals, but to adjust corporate burdens, which the legisla-

ture, in furtherance of the claims of humanity, has seen fit to place upon towns. They constitute a branch of the law in which the court never feel at liberty to be influenced by equitable considerations, or to hold a matter to be within the reason and spirit of the statute, when it cannot be brought within its terms. We must accordingly decide that the property of Derby was not set in the list at sixty dollars or over, for five successive years, within the meaning of the statute.

Judgment affirmed.